## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **HEIDI DEBROBANDER,**<br>**Individually and on behalf of all others**<br>**similarly situated,** | Case No. _3:24-CV-550-GNS_ |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| v. | **COLLECTIVE ACTION**<br>**PURSUANT TO 29 U.S.C. § 216(b)** |
| **HUMANA, INC., and HUMANA**<br>**GOVERNMENT BUSINESS, INC.** | **CLASS ACTION PURSUANT TO**<br>**FED. R. CIV. P. 23** |
| **Defendants.** | **NATIONWIDE RELIEF SOUGHT** |

### ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff—Heidi DeBrobander—brings this action individually and on behalf of all current and former hourly call-center employees (collectively, "Plaintiff and the Putative Collective/Class Members"), who worked for Defendants—Humana, Inc. ("Humana") and Humana Government Business, Inc. ("HGBI")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1–105/15 ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1–115/15 ("IWPCA") (the IMWL and IWPCA are collectively referred to as the "Illinois Acts").

# I.
## OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and class actions pursuant to the state laws of Illinois under FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2.      Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Defendants in call centers or remotely at any time during the relevant time periods through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3.      Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.      During the relevant time period(s), Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.      Specifically, Defendants' regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to require the Plaintiff and the Putative Collective/Class Members to perform necessary and indispensable work—preparing their essential computer systems

and programs—off-the-clock prior to starting their shift and at the end of their unpaid meal break (collectively, the "Start-Up Work").

7.      The effect of Defendants' practices was (and is) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Defendants have failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

8.      Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

9.      Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

10.     Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time and other damages owed under the state laws of Illinois as a class action pursuant to FED. R. CIV. P. 23.

11.     Plaintiff also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

12.     Plaintiff also prays that the Rule 23 classes are certified as defined herein, with the Plaintiff designated herein named as the Class Representative.

## II.
## THE PARTIES

13.     Plaintiff—Heidi DeBrobander ("DeBrobander")—was employed by Defendants in Illinois during the relevant time period(s). Plaintiff DeBrobander did not receive compensation for all

hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

14.     The FLSA Collective Members are those current and former hourly call-center employees[2] who were employed by Defendants at any time from September 20, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and were paid.

15.     The IWPCA Class Members are those current and former current and former hourly call-center employees who were employed by Defendants in the State of Illinois at any time from September 20, 2014, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff DeBrobander worked and was paid.

16.     The IMWL Class Members are those current and former current and former hourly call-center employees who were employed by Defendants in the State of Illinois at any time from September 20, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff DeBrobander worked and was paid.

17.     Defendant Humana, Inc. is a foreign for-profit corporation, that is headquartered in, and licensed to do business in, the State of Kentucky and may be served through its registered agent for service of process: **CT Corporation System, 306 W. Main St., Suite 512, Frankfort, Kentucky 40601**.

18.     Defendant Humana Government Business, Inc. is a foreign for-profit corporation, that is headquartered in, and licensed to do business in, the State of Kentucky and may be served

[1] The written consent of Heidi DeBrobander is attached hereto as Exhibit "A."

[2] Plaintiff's definition of "call center employees" include employees who handle inbound and outbound phone calls on behalf of Humana and who work either in call centers or remotely from their home.

through its registered agent for service of process: **CT Corporation System, 306 W. Main St., Suite 512, Frankfort, Kentucky 40601**.

19.     Defendants are joint employers pursuant to the FLSA. They have common ownership, oversight and control over Plaintiff and the Putative Collective/Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

### III.
### JURISDICTION & VENUE

20.     This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

21.     This Court has supplemental jurisdiction over Plaintiff's additional state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

22.     Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

23.     This Court has general personal jurisdiction over Defendants because Kentucky qualifies as their home state.

24.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Western District of Kentucky because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

25.     Additionally, Defendants' corporate headquarters are in Louisville, Kentucky, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

26.    As one of the United States' largest providers of health insurance, Humana and its subsidiaries and affiliates, including HGBI, are a unified health insurance provider.[3]

27.    To provide their services, Defendants employed (and continue to employ) numerous Call Center Employees—including Plaintiff and the individuals that make up the putative or potential class.

28.    While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work throughout Defendants' facilities in the United States.

**Defendants Are Joint Employers Under the FLSA**

29.    Defendants are joint employers pursuant to the FLSA.

30.    Defendants are integrated companies that share customers, properties, employees, and all other assets.

31.    Defendant Humana is the ultimate legal parent of HGBI.[4]

32.    Defendant Humana has the power to hire and fire any and all of HGBI's employees.

33.    Defendant Humana supervises and controls all of the HGBI's employees' work schedules and conditions of employment.

34.    Defendant Humana determines the rate and method of payment for all employees working under HGBI.

35.    On information and belief, Humana made the decision for its subsidiaries and affiliates—the other Defendants—to not pay for the Start-Up work.

---

[3] https://www.humana.com/about (last visited on August 21, 2024).

[4] https://humana.gcs-web.com/static-files/f4043f22-fc0d-46d4-8fe9-98d2a3aa26c6, page 151 (last visited on August 21, 2024).

36.     Defendant Humana maintains employment records for the direct employees of all HGBI.

37.     Specifically, Humana controls the HR Department which maintains all the employment records for all of HGBI's employees.

38.     Defendant Humana manages key internal relationships to HGBI—that is, Defendant Humana directs the financials of HGBI and controls the pay, hours and schedules of Plaintiff and the Putative Collective/Class Members.

39.     Moreover, all Defendants have (or had) the power to hire and fire Plaintiff and the Putative Collective/Class Members; supervise and control Plaintiff and the Putative Collective/Class Members' work schedules and conditions of their employment; determine their rate and method of payment, and jointly maintain their employment records.

40.     As a result, all Defendants are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA with respect to the entire employment for the workweeks at issue in this case.

**Plaintiff and the Putative Collective/Class Members are Similarly Situated**

41.     Plaintiff and the Putative Collective/Class Members were employed by Defendants to handle calls for Defendants' products, customer assistance, sales, and bill collection.

42.     Plaintiff DeBrobander was employed by Defendants as an hourly Billing and Enrollment Specialist in Illinois from approximately October 2021 until February 2022.

43.     Plaintiff and the Putative Collective/Class Members are hourly call-center employees that were (and continue to be) paid by the hour.

44.     Plaintiff and the Putative Collective/Class Members typically worked (and continue to work) five days per week and approximately forty (40) on-the-clock hours per week.

45.    On some occasions, Plaintiff and the Putative Collective/Class Members would work less than forty (40) hours in a week.

46.    In addition to their scheduled "on-the-clock" hours, Plaintiff and the Putative Collective/Class Members worked (and continue to work) between ten (10) to twenty (20) minutes off-the-clock per day for which they were not compensated.

47.    In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours in a week, the off-the-clock work qualified as unpaid overtime.

48.    In weeks in which Plaintiff and the Putative Collective/Class Members worked less than forty (40) hours in a week, the off-the-clock work would qualify as unpaid straight time.

49.    Defendants employed (and continues to employ) other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

50.    Moreover, Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in the complained of FLSA and state law violations alleged herein.

## Unpaid Start-Up Work

51.    Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked for Defendants as a result of Defendants' corporate policy and practice of requiring all call-center employees to be ready to take their first phone call within minutes of clocking in.

52.    Specifically, Plaintiff and the Putative Collective/Class Members were (and continue to be) required to perform integral and indispensable tasks before clocking in. The Start-Up Work was necessary to prepare for their shifts and allow them to begin taking calls after clocking in. The Start-Up Work includes: turning on the computer and waiting for it to boot-up; opening up and logging

into the Virtual Protected Network; opening and logging into other client specific programs and databases, and reading emails.

53.    The Start-Up Work can take anywhere from ten (10) minutes up to twenty (20) minutes each time the Plaintiff and Putative Collective/Class Members clock in.

54.    In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Start-Up Work qualified as unpaid straight time.

55.    In weeks in which the Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Start-Up Work qualified as unpaid overtime.

56.    Defendants required (and continues to require) Plaintiff and the Putative Collectives/Class Members be ready to accept their first call within one minute of clocking in both at their start of shift and after clocking back in at the end of the meal break.

57.    Specifically, Plaintiff DeBrobander was told by her supervisor that she needed to be active and taking calls within a minute of clocking in.

58.    If Plaintiff and the Putative Collective/Class Members had not completed their Start-Up Work prior to clocking in, they would not be prepared to take phone calls by their shift start time, they can be (and often are) subject to discipline.

59.    Indeed, Defendants tracked the amount of time Plaintiff and the Putative Collective/Class Members spent on the clock and active on the dialer (accepting calls) and how much time they spent on the clock but not active on the dialer (not accepting calls). Those hourly call-center employees who spent too much time on the clock but off the dialer were subject to discipline for "stealing time."

60.    Some of the Plaintiff and the Putative Collective/Class Members' Start-Up Work had to be performed before Plaintiff and the Putative Collective/Class Members could even access the clock in program.

61.     Specifically, turning on the computer, logging into the computer, logging into the Virtual Protected Network, and logging into other security verification programs had to be performed before the Plaintiff and the Putative Collective/Class Members could log into the clock in program.

62.     Even though Defendants knew these tasks had to be completed before the Plaintiff and the Putative Collective/Class Members had to perform this work prior to even being able to access the clock in program, Defendants do not credit them time for this work.

63.     Defendants consider time spent turning on the computer, logging in to the desktop, and logging into the Virtual Protected Network and other similar security programs to be non-compensable work.

64.     After turning on the computer, logging in, and logging into all of the security programs, Plaintiff and the Putative Collective/Class Members could then access their Humana programs and databases.

65.     Plaintiff and the Putative Collective/Class Members were required by Humana to open and stabilize all of their programs and databases prior to going active on the dialer program.

66.     Should a Plaintiff or Putative Collective/Class Member go active on the dialer program and begin taking calls before the programs were open and stabilized, the Plaintiff or Putative Collective/Class Member would not be able to access information and material critical to help the caller, such as plan information, customer data, provider data, health care records, billing information, or other sensitive information.

67.     Because the programs and databases could take several minutes to open and stabilize, Plaintiff and the Putative Collective/Class Members could not clock in until the programs were open and stabilized, otherwise they could receive discipline for being active on the dialer within a minute of clocking in.

68.    Therefore, the only way to be ready and have completed the Start-Up Work on time, and avoid discipline, is to complete the Start-Up Work off-the-clock and without pay.

69.    Defendants knew the Start-Up Work took a substantial amount of time and encouraged performing the Start-Up Work off-the-clock.

70.    During training, Plaintiff DeBrobander and her training class were told by their trainer that they should begin preparing their computers at least fifteen minutes before their clock in time.

71.    Even though Plaintiff DeBrobander typically started her work day fifteen minutes prior to clocking in, she still received a tardy on one occasion because her Virtual Protected Network crashed twice during the log in process, causing her to not go active on the dialer until three (3) minutes after her shift start.

72.    Although this start-up time is necessary and integral to their job duties, Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

73.    As such, Defendants required (and continues to require) that Plaintiff and the Putative Collective/Class Members perform the Start-Up Work "off-the-clock" before they clock in.

74.    As a result of Defendants' company-wide policy and practice of requiring Plaintiff and the Putative Collective/Class Members to perform their Start-Up Work off-the-clock before the beginning of their shifts Plaintiff and the Putative Collective/Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

75.    Defendants were (and continue to be) aware of their obligation to pay Plaintiff and the Putative Collective/Class Members for all hours worked and pay the proper amount of overtime for all hours worked in excess of forty (40) each week but has failed to do so.

76.    Because Defendants did not pay Plaintiff and the Putative Collective/Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices violate the FLSA and the state laws of Illinois alleged herein.

77.    Because Defendants did not pay Plaintiff and the Putative Collective Members time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices willfully violate the FLSA.

78.    Specifically, after receiving her tardy, Plaintiff DeBrobander complained to her manager and wrote a complaint to Defendants' Human Resource Department to complain of the unfair pay practices, stating such Start-Up Work should be paid.

79.    Defendants never responded to Plaintiff DeBrobander's letter and never paid her for her Start-Up Work.

80.    Because Defendants did not pay Plaintiff and the Putative Class Members for all hours worked within the time frame required by the state laws of Illinois, Defendants' pay policies and practices also violate the state laws of Illinois.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Collective Action Alleging FLSA Violations)**

**A.    FLSA COVERAGE**

81.    The preceding paragraphs are incorporated as though fully set forth herein.

82.    The "FLSA Collective" and "FLSA Collective Members" are defined as follows:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY HUMANA, INC. AND HUMANA GOVERNMENT BUSINESS, INC., AT ANY TIME FROM SEPTEMBER 20, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

83.    At all material times, Defendants have been employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

84.    At all material times, Defendants have been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

85.    At all material times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of insurance and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

86.    Specifically, Defendants employ numerous call-center employees to provide services in the insurance industry across the United States, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

87.    During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

88.    In performing work for Defendants, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

89.    Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Defendants' customers and employees throughout the United States. 29 U.S.C. § 203(j).

90.     At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

91.     The proposed classes of similarly situated employees—that is, the FLSA collectives sought to be certified pursuant to 29 U.S.C. § 216(b), are defined in Paragraph 82.

92.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

**B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

93.     Defendants violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of insurance sales, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

94.     Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

95.     Defendants knew or should have known their pay practices were in violation of the FLSA.

96.     Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

97.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Defendants to pay them according to the law.

98.     The decision and practice by Defendants to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

99.     Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

100.    All previous paragraphs are incorporated as though fully set forth herein.

101.    Pursuant to 29 U.S.C. § 216(b), Plaintiff bring this action collectively on behalf of Defendants' employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

102.    Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

103.    The FLSA Collective is defined in Paragraph 82.

104.    Defendants' failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Defendanats, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

105.    Thus, Plaintiff' experiences are typical of the experiences of the FLSA Collective Members.

106.    The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

107.    All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

108.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

109.    Absent a collective action, many members of the proposed FLSA collectives will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

110.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

111.    Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated Plaintiff as in Paragraph 82.

## SECOND CAUSE OF ACTION
### (Class Action Alleging Violations of the IMWL)

A.    **IMWL COVERAGE**

112.    All previous paragraphs are incorporated as though fully set forth herein.

113.    The "IMWL Class" and "IMWL Class Members" are defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY HUMANA, INC. AND HUMANA GOVERNMENT BUSINESS, INC., IN THE STATE OF ILLINOIS, AT ANY TIME FROM SEPTEMBER 20, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

114.    At all material times, Defendants have been an "employer" as defined by the IMWL. *See* 820 ILL. COMP. STAT. 105/3(c).

115.    At all material times, Plaintiff DeBrobander and the IMWL Class Members were Defendants' "employees" as defined within the IMWL. *See* 820 ILL. COMP. STAT. 105/3(d).

116.    Defendants—the "employers"—are not exempt from paying wages and overtime benefits under the IMWL.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE IMWL**

117.    All previous paragraphs are incorporated as though fully set forth herein.

118.    The IMWL requires employers, like Defendants, to pay employees, including Plaintiff DeBrobander and the IMWL Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay—based on all renumeration recovered—for all hours worked after forty (40) hours in a workweek. *See* 820 ILL. COMP. STAT. 105/4a.

119.    Defendants violated, and continues to violate, the IMWL by failing to pay Plaintiff DeBrobander and the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including off-the-clock hours worked by Plaintiff and the IMWL Class Members during their Start-Up Work.

120.    In violating the IMWL, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Illinois law.

121.    As a direct and proximate result of Defendants' willful conduct, Plaintiff DeBrobander and the IMWL Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including treble damages, monthly statutory damages, and reasonable attorneys' fees pursuant to the IMWL. *See* 820 ILL. COMP. STAT. 105/12(A).

122.     Defendants are in possession and control of necessary documents and information from which Plaintiff DeBrobander would be able to precisely calculate damages.

123.    The proposed class of putative class members sought to be certified pursuant to the IMWL is defined in Paragraph 113.

124.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## C.    IMWL CLASS ALLEGATIONS

125.    Plaintiff DeBrobander and the IMWL Class Members bring their IMWL claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in Illinois since September 20, 2021.

126.    Class action treatment of Plaintiff DeBrobander and the IMWL Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

127.    The number of IMWL Class Members is so numerous that joinder of all class members is impracticable.

128.    Plaintiff DeBrobander's IMWL state-law claims share common questions of law and fact with the claims of the IMWL Class Members.

129.    Plaintiff DeBrobander is a member of the IMWL Class, her claims are typical of the claims of other IMWL Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other IMWL Class Members.

130.    Plaintiff DeBrobander and her counsel will fairly and adequately represent the IMWL Class Members and their interests.

131.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the IMWL Class should be certified as defined in Paragraph 113.

### THIRD CAUSE OF ACTION
**(Class Action Alleging Violations of the IWPCA)**

**A.     IWPCA COVERAGE**

132.    All previous paragraphs are incorporated as though fully set forth herein.

133.    The "IWPCA Class" and "IWPCA Class Members" are defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY HUMANA, INC. AND HUMANA GOVERNMENT BUSINESS, INC, IN THE STATE OF ILLINOIS, AT ANY TIME FROM SEPTEMBER 20, 2014, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

134.    At all material times, Defendants have been an "employer" as defined by the IWPCA. *See* 820 ILL. COMP. STAT. 115/2.

135.    At all material times, Plaintiff DeBrobander and the IWPCA Class Members were Defendants' "employees" as defined within the IWPCA. *Id.*

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE IMWL**

136.    All previous paragraphs are incorporated as though fully set forth herein.

137.    The IMWL requires employers, like Defendants, to pay employees, including Plaintiff DeBrobander and the IMWL Class Members, for all hours they work at the rate(s) agreed to by the Parties.

138.    During the course of their employment, Defendants agreed to pay Plaintiff DeBrobander and each IWPCA Class Member an hourly rate for all hours they worked up to 40 hours in a workweek.

139.    Plaintiff DeBrobander and each IWPCA Class Member accepted Defendants' offer.

140.    But during the course of their employment, Defendants failed to pay Plaintiff DeBrobander and the IWPCA Class Members for all the time they worked at the rates Defendants agreed to pay them because Defendants failed to pay Plaintiff DeBrobander and the IWPCA Class Members for work performed off-the-clock, during their unpaid meal break.

141.    Defendants violated and continues to violate the IWPCA by failing to pay Plaintiff DeBrobander and the IWPCA Class Members all wages earned (at the rates Defendants agreed to pay them) for all hours of work they performed for Defendants' benefit.

142.    In violating the IWPCA, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Illinois law.

143.    As a direct and proximate result of Defendants' willful conduct, Plaintiff DeBrobander and the IWPCA Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, monthly statutory damages, and reasonable attorneys' fees pursuant to the IWPCA. *See* 820 ILL. COMP. STAT. 115/14(A).

144.    Defendants are in possession and control of necessary documents and information from which Plaintiff DeBrobander would be able to precisely calculate damages.

145.    The proposed class of putative class members sought to be certified pursuant to the IWPCA is defined in Paragraph 133.

146.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## C.    IWPCA CLASS ALLEGATIONS

147.    Plaintiff DeBrobander and the IWPCA Class Members bring their IWPCA claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in Illinois since September 20, 2014.

148.    Class action treatment of Plaintiff DeBrobander and the IWPCA Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

149.    The number of IWPCA Class Members is so numerous that joinder of all class members is impracticable.

150.    Plaintiff DeBrobander's IWPCA state-law claims share common questions of law and fact with the claims of the IWPCA Class Members.

151.    Plaintiff DeBrobander is a member of the IWPCA Class, her claims are typical of the claims of other IWPCA Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other IWPCA Class Members.

152.    Plaintiff DeBrobander and her counsel will fairly and adequately represent the IWPCA Class Members and their interests.

153.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the IWPCA Class should be certified as defined in Paragraph 133.

## VI.
## RELIEF SOUGHT

154.    Plaintiff respectfully prays for judgment against Defendants as follows:

a.      For an Order certifying the FLSA Collective as defined in ¶ 82;

b.      For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.      For an Order pursuant to § 16(b) of the FLSA finding Defendants liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d.      For an Order certifying the IPWCA Class as defined in ¶ 113, and designating Plaintiff DeBrobander as Representative of the IPWCA Class;

e.      For an Order pursuant to the Illinois state law awarding Plaintiff DeBrobander and the IPWCA Class Members damages for unpaid wages and all other damages allowed by law;

f.      For an Order certifying the IMWL Class as defined in ¶ 133, and designating Plaintiff DeBrobander as Representative of the IMWL Class;

g.      For an Order pursuant to the Illinois state law awarding Plaintiff DeBrobander and the IMWL Class Members damages for unpaid wages and all other damages allowed by law;

h.      For an Order awarding the costs of this action;

i.      For an Order awarding attorneys' fees;

j.      For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

k.      For an Order awarding Plaintiff Janson, Jacklin, and DeBrobander service awards as permitted by law;

l.      For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense (should discovery prove inadequate); and

m.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: September 25, 2024                    Respectfully submitted,


                                            THE LAWRENCE FIRM, PSC

                            BY:     /S/ ANNE L. GILDAY
                                    ANNE L. GILDAY (KY BAR ID: 90126)
                                    535 MADISON AVE., SUITE 500
                                    COVINGTON, KY 41011
                                    TELEPHONE: 859-578-9130
                                    FAX: 859-578-1032
                                    anne.gilday@lawrencefirm.com

ANDERSON ALEXANDER, PLLC

By:    /s/ Clif Alexander
       **Clif Alexander** *(Pro Hac Vice Anticipated)*
       Texas Bar No. 24064805
       clif@a2xlaw.com
       **Austin W. Anderson** *(Pro Hac Vice Anticipated)*
       Texas Bar No. 24045189
       austin@a2xlaw.com
       **Carter Hastings** *(Pro Hac Vice Anticipated)*
       Texas Bar No. 24101879
       carter@a2xlaw.com
       101 N. Shoreline Blvd, Suite 610
       Corpus Christi, Texas 78401
       Telephone: (361) 452-1279
       Facsimile: (361) 452-1284

       *Counsel for Plaintiff and Putative
       Collective/Class Members*